Interim Decision #1550

MATTER OF FREEMAN

In Visa Petition Proceedings ·

A-13498524

*Decided by Board January 24, 1966*

Notwithstanding petitioner's first marriage was terminated in 1954 by an *in absentia* Mexican divorce secured by his U. S. citizen wife, his second marriage in 1965 in Korea to beneficiary is valid for immigration purposes since it is valid under the law of the place where contracted.

This case is before us pursuant to the motion of the Service for reconsideration of our order of November 4, 1965 in which we directed approval of the visa petition.

The petitioner, a native born United-States citizen, married the beneficiary, Sue Cha Kang, on March 17, 1965 in Korea. He had been previously married to Imogene Behnning in 1946 and one child was born of this marriage. They separated in 1949 and his first wife obtained a divorce at Juarez, Chihuahua, Mexico on December 11, 1954. The petitioner has been employed by the Bank of America overseas since May 31, 1952. Apparently he has been in Korea since that date but regards the State of California as his legal residence. The sole issue in this case is whether there is a valid marriage between the petitioner and the beneficiary, and the question further resolves itself into whether the petitioner's first marriage has been terminated.

Subsequent to our consideration of the case, the petitioner submitted to the Service a letter of June 11, 1965 by his first wife. This letter is to the effect that the Mexican divorce was "arranged" by a member of the California bar; that this petitioner "signed the papers" and apparently paid part of the fee involved; that she thereafter remarried; that the validity of the Mexican divorce was recognized at that time; and that she has two children by her second marriage. She resents the fact that a question has been raised concerning the validity of the Mexican divorce and it appears unlikely that she would be willing to furnish any additional information concerning the matter.

482

In our order of November 4, 1965, we referred to the Acting Attorney General's decision in *Matter of P—*, 4 I. & N. Dec. 610 (1952) and his statement therein (p. 614) that a plain Congressional purpose was to facilitate and foster the maintenance of families. He also said that it seemed "reasonable to believe that the Congress intended that the marriage of a citizen, valid where contracted, be accorded validity for immigration purposes", and that was the basis of the decision. There, the first wife was in Tijuana, Mexico, for two days to consult a lawyer about filing the proceeding but neither party was in Mexico between the actual filing of the divorce proceeding and the decree of divorce and neither party was ever in the State of Tlaxcala, the divorce having been granted by a court of that state. It is clear that the fact that the first wife had been in Mexico for two days had no bearing on the Acting Attorney General's decision. There, the petitioner's second marriage occurred in Germany whereas here the second marriage took place in Korea. With that exception and the fact that we do not know whether this petitioner's first wife consulted a lawyer in Mexico, the facts in this petitioner's case and in *Matter of P—* are entirely analogous.

The Service seeks to distinguish *Matter of P—* by stating that there was no impediment under German law to the recognition of the Mexican divorce and that there is such an impediment under Korean law. In this connection, there was attached to the motion a memorandum prepared by Dr. Sung Yoon Cho of the Far Eastern Law Division, Law Library, Library of Congress, and the Service stated that this memorandum sets forth in greater detail the statutory provision quoted by its officer at Tokyo in his decision. Hence, it appears that the Service relies on Article 18 of Law No. 966 of January 15, 1962 which is as follows:

Art. 18. Divorce shall be governed by the law of the home country of the husband at the time of the occurrence of the fact forming its cause. However, the court may make no adjudication of divorce unless the fact forming its cause also constitutes a cause of divorce according to Korean law.

The first sentence of Article 18 is identical with the Korean Statutory provision quoted by the officer-in-charge. Actually, there is no statement in Article 18 as to the requirements for a valid *marriage* under the laws of Korea, and the only citation concerning a law governing marriage is the American Consular Officer's reference to Article 812 of the Korean Civil Code of February 22, 1958. However, that statutory provision is not part of the record before us. We believe that Article 18 simply means that, where a suit for divorce is filed in a Korean court and at least one of the parties is not a national of Korea, then the divorce proceeding shall be

governed by the law of the home country of the husband at the time the ground for divorce arose but that the court will not grant a divorce unless the ground of divorce is also a ground under Korean law. This is .clear from the statement on page 2 of Dr. Cho's memorandum concerning "the absence of specific provisions under the above Statute covering the question of the recognition of divorce effected between non-Korean nationals abroad". Dr Cho then stated that Professor Kim was of the opinion that divorce effected between aliens abroad should be recognized in Korea so far as it was effected according to the law of the home country of a party, citing Professor Kim's book "New Private International Law".

In view of the foregoing, there is nothing to indicate that there is any specific statutory provision of Korean law which would preclude recognition of the Mexican divorce. The most that can be said is that a Professor Kim, who has written a book entitled "New Private International Law", *was of the opinion* that a divorce outside Korea by non-Korean nationals *should be recognized* in Korea if it was secured according to the law of the home country of a party. The home country of this petitioner and his first wife is the United States and there may be some question as to whether the State of California can be equated to "home country". As against the nebulous theory of the Service, we have the fact that the petitioner's first wife secured the Mexican divorce after consulting a member of the California bar; that she has remarried and has children by her second marriage; that over 11 years have elapsed since she obtained the Mexican divorce during which period its validity has not been questioned heretofore; that both parties have considered their marriage terminated by reason of the divorce; that a copy of the Mexican divorce decree was exhibited at the time of the petitioner's marriage to the beneficiary; and that the American Vice Consul was apparently satisfied as .to the validity of the marriage between the petitioner and the beneficiary. We conclude that the Acting Attorney General's decision in *Matter of P—*, *supra*, is controlling and that our previous action directing approval of the visa petition was correct. Hence, the motion of the Service will be denied and we shall not accede to its request that the case be remanded to the Field Office for the receipt of additional evidence.

ORDER: It is ordered that the motion of .the Service for reconsideration, except as reconsidered herein, be and the same is hereby denied.