**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-2617
_____

FANTA TOURE; SAMBA DIAKITE,
Appellants

v.

UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES;
SECRETARY UNITED STATES DEPARTMENT OF HOMELAND SECURITY;
DIRECTOR UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES;
CHAIRMAN BOARD OF IMMIGRATION APPEALS; DIRECTOR USCIS
PHILADELPHIA FIELD OFFICE
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-18-cv-01889)
District Judge:  Hon. Michael M. Baylson
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a):
March 26, 2020
_____

Before:  JORDAN, RESTREPO, and FUENTES, *Circuit Judges.*

(Filed: July 7, 2020)

_____

**OPINION**[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

RESTREPO, *Circuit Judge*.

Before us is the question of whether the U.S. Citizenship and Immigration Services (USCIS) properly denied Samba Diakite's petition for a spousal visa on behalf of his wife, Fanta Toure, on grounds that he failed to establish that Toure was free to marry him. The District Court upheld the agency decision under the Administrative Procedures Act (APA). We will affirm the District Court decision.

**I**

Toure is a native and citizen of Mali. She first entered the United States in 2000 on a B-2 tourist visa. In the application for that visa, Toure listed her last name as "Toure epouse Kone," JA987, 992, which means "Toure, spouse of Kone." Her husband's name was listed as "Cheick Oumar Tidiani Kone." JA989, 991. Seven years later, she married Diakite, a U.S. citizen.

In November 2007, Diakite began the process of applying for a spousal visa on behalf of Toure (Form I-130), so she could adjust her legal status (Form I-485). Over the course of several application attempts, Toure made a series of conflicting representations regarding her marital history and status.

At one point during these spousal visa proceedings, USCIS placed Toure into separate removal proceedings based on "several willful misrepresentations of material fact" that she had allegedly made in connection with her visa applications. JA396. An immigration court stayed the removal proceedings pending the conclusion of the spousal visa proceedings.

2

After USCIS denied Diakite's fourth application for a spousal visa, Diakite and Toure appealed that decision to the Board of Immigration Appeals (BIA). The BIA dismissed the appeal, noting inconsistencies in the record that failed to establish that Toure was free to marry.

The couple appealed the BIA's decision to the District Court, claiming that the agency decision was arbitrary and capricious in violation of the APA. The court disagreed and entered summary judgment for the government. Toure and Diakite now appeal the decision of the District Court.[1]

## II

We exercise plenary review over a district court's grant of summary judgment in actions brought under the APA and apply the same standard that the district court was required to apply to "the underlying agency decision." *Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.*, 730 F.3d 291, 305 (3d Cir. 2013) (internal quotation marks omitted). Under the APA, a court can set aside an agency decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Prometheus Radio Project v. FCC*, 373 F.3d 372, 389 (3d Cir. 2004) (quoting 5 U.S.C. § 706(2)(A)).

We look to see if "the agency examined the relevant data and articulated a satisfactory explanation for its action, including a 'rational connection between the facts found and the choice made.'" *Id.* at 389-90 (quoting *Motor Vehicle Mfrs. Ass'n v. State*

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1331 and 5 U.S.C. § 704. We have jurisdiction under 28 U.S.C. § 1291.

*Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983)). "Courts are not permitted to re-weigh the evidence or impose their own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

**III**

"In order to establish eligibility for a spousal visa petition, the petitioner must prove, by a preponderance of the evidence, that any previous marriages of both the petitioner and the beneficiary have been legally terminated." *Matter of Kodwo*, 24 I. & N. Dec. 479, 479 (BIA 2008) (citing 8 C.F.R. § 204.2(a)(2)).

Here, the BIA determined that Diakite failed to establish Toure's eligibility for a spousal visa after the couple submitted "conflicting evidence, both in the form of the claims of the beneficiary [Toure] herself and the objective evidence of record, as to whether (and to whom) the beneficiary was previously married, and thus whether she was free to marry the petitioner [Diakite]." JA35.

The record reveals that Toure made inconsistent representations regarding her marital status and history on various visa applications. On her application for a B-2 visa, she claimed to be married to a man named Cheick Oumar Tidiani Kone. When Diakite later applied for a spousal visa on her behalf, she asserted that she had not been previously married and admitted to having misrepresented her marital status on her B-2 visa form. After USCIS notified the couple of its intent to deny the spousal visa petition, Toure changed course and claimed that she had been married to a man named Moussa Kone (not Cheick Oumar Tidiani Kone) who had passed away. At that point, USCIS

4

denied Diakite's petition for the first time, setting off a series of three subsequent petitions in which Diakite and Toure attempted to set the record straight, to no avail. Eventually, Toure settled on the position that she had never been previously married. Regardless of which of these representations is true, they cannot all simultaneously be true, creating reasonable doubt as to her actual marital history and status.

Furthermore, as the BIA noted, the objective evidence the couple submitted did not help to dispel this confusion, but rather "add[ed] to it." JA35. For example, at one point, Toure produced a marriage certificate establishing her marriage to Moussa Kone, as well as his death certificate. These documents were purportedly issued by the District of Bamako, the capital of Mali. She later submitted a certificate of celibacy to support her claim that she had never been married, a document that was also supposedly issued by the District of Bamako. The contradictions between these documents raised legitimate concerns about the reliability of this evidence.

In light of this record, the agency reasonably concluded that Diakite failed to prove by a preponderance of the evidence that Toure was free to marry. *See Quezada-Caraballo v. Lynch*, 841 F.3d 32, 33 (1st Cir. 2016) (upholding the BIA's determination that, "in light of [the applicant's] misrepresentations" and "the record as a whole," she failed "to meet her burden to establish by a preponderance of the evidence that she had entered into a good-faith marriage").

The appellants claim that the agency decision is arbitrary and capricious because it conflicts with the position the government has taken in Toure's removal proceedings. They argue that the government cannot rationally conclude that there was not enough

5

evidence to show that Toure was single, when she entered the United States, for purposes of denying her spousal visa, while at the same time taking the position that there is enough evidence to show that she was single and misrepresented that fact for purposes of seeking her removal. While these may sound like conflicting positions, on closer review, the government's allegations in the removal proceedings do not necessarily contradict the agency decision.

In removal proceedings, the government bears the initial burden of proving by clear and convincing evidence that a person is removable. 8 C.F.R. § 1240.8(a). A person is removable if she has obtained or sought to obtain a visa by fraud or willful misrepresentation of a material fact, among other grounds. 8 U.S.C. § 1227(a)(1)(A); 8 U.S.C. § 1182(6)(C)(i).

The government's ability to make that showing is not contingent on the agency decision here. To be clear, USCIS has not decided whether Toure was or was not in fact single when she entered the United States or whether she mispresented that fact. Rather, it only determined that Diakite failed to carry his burden of proving that it was more likely than not that Toure was free to marry him. As the government points out, Toure has made multiple representations that are potentially false, including that she was married to two different men (one of whom purportedly died) and that she was never married. The government could rely on any of these assertions (not only her representation that she was married when she entered the United States) to make its case for removal. Whether the immigration court's ultimate determination in Toure's removal

6

proceedings is reconcilable with the agency decision here and whether that matters are questions for another day.[2]

## IV

For these reasons, we will affirm the District Court decision.

---

[2] The appellants also argue that we should apply a stricter form of scrutiny to an agency decision when there are "conflicts of interest which may have tainted the decision-making process." Appellants' Br. 11 (citing *Pinto v. Reliance Std. Life Ins. Co.*, 214 F.3d 377, 379 (3d Cir. 2000)). We will not reach this issue, because the appellants did not present it to the District Court. *See Lloyd v. Hovensa*, 369 F.3d 263, 272-73 (3d Cir. 2004).